Stephen S. Scopas, M.
This case involves a charge against one Allan R. Jones, of operating a motor vehicle on the 6th day of December, 1957 at about 7:00 p.m. in excess of the speed allowed by law, to wit, 40 miles per hour in violation of section 60 of article 4 of the Traffic Regulations of the City of New York.
The summonsing officer, patrolman Jack Katz, testified that while operating radio patrol car number 1231, defendant was observed traveling north on the Van Wyck Expressway at what appeared to him to be an excessive rate of speed; that he paced the defendant at an equal distance from him in the vicinity of Liberty Avenue for a distance of three tenths of a mile; and that his speedometer at no time read less than 55 miles per hour. The defendant testified that he was operating a 1957 Triumph sports car, purchased by him as a demonstrator car in June of 1957. He maintained that his speedometer never registered in excess of 40 miles per hour. He conceded, however, that his speedometer was never tested as to accuracy since the purchase of his vehicle.
These diametrically opposed contentions placed the guilt or innocence of the defendant squarely upon proof of accuracy of the speedometer in vehicle number 1231 operated by patrolman Katz on the day in question.
The People have the burden of proving the charge of a traffic offense beyond a reasonable doubt. Heretofore, it has been the practice of the police department, as part of the People’s case, to produce, in addition to the summonsing officer who witnessed the alleged violation, a second witness who either tested or witnessed the testing of the speedometer of the summonsing officer’s vehicle prior to, and subsequent to, the date of the alleged violation. This has resulted in demobilizing from the more vital duties of patrol a number of officers for the purpose of appearing in court and acting as witnesses. Quite often the public has been inconvenienced because of a conflict in the scheduled appearances of these officers throughout the various boroughs of our city.
The customary testimony of the speedometer witness is to the effect that the police car is backed on a set of rollers; that the vehicle is started and run at various speeds from 10 to 70 miles an hour to simulate road driving; that the speedometer on the vehicle is tested against the master speedometer, which is directly in front and slightly to the left of the vehicle in *1069 question. If there is no variance of a mile and one-half either way under 50 miles per hour, or two and one-half miles either way over 50 miles per hour, then the speedometer of the vehicle is considered accurate. A card is signed by the tester and two patrolmen who witness the test, and it is filed at the command for use in speed trials. There are other provisions for the repair of speedometers in the event their testing fails to come within the aforesaid tolerance, but we are not concerned with those records at this time.
In lieu of the appearance of a second witness at this trial to testify to the routine testing of the summonsing officer’s vehicle, the People offered in evidence, pursuant to section 374-a of the Civil Practice Act, the card kept at the command reflecting the pertinent results of such tests made of the speedometer on police vehicle number 1231. Over the objections and exception taken by defense counsel, this card was deemed accepted in evidence by the court as People’s Exhibit 1.
The summonsing officer testified that this card was kept in the ordinary course of business pursuant to the rules and procedures promulgated by the police commissioner. He testified further that the vehicle of the summonsing officer was tested on December 4, 1957 (prior to the alleged violation) by patrolman McDonald and witnessed by patrolmen Weinberg and Mupo and found to be accurate on that date as well as on December 18, 1957 (subsequent to the alleged violation) when the next test was made and witnessed by the same patrolmen. None of the aforesaid patrolmen were in court to testify, and their failure to appear formed the basis of defense counsel’s objection who maintained that this deprived defendant of his right to confrontation and cross-examination.
The court now feels that it should review the pertinent authorities bearing on the propriety of its action in admitting into evidence the police records pursuant to section 374-a of the Civil Practice Act.
Section 982-8.0 of the Administrative Code of the City of New York, entitled “Judicial notice ” provides, in part, as follows: “All courts shall take judicial notice of all laws contained in this code, the charter, local laws, or ordinances, the sanitary code, resolutions, and of all rules and regulations adopted pursuant to law.”
Section 885 of the City Charter reads, in part, as follows: ‘ ‘ Each head of an agency may, except as otherwise provided by law, make rules and regulations for the conduct of his office or department and to carry out its powers and duties.”
*1070 Richardson on Evidence (8th ed., § 25, pp. 16,17) states: “ By virtue of the Administrative Code of the City of New York, section 982-8.0 the court, however, is required to take judicial notice of all rules and regulations of New York City administrative boards and agencies.”
This court, quite mindful of its origin as a police court, and in conformity with the authorities heretofore cited, took judicial notice of the following Rules and Procedures promulgated by the police commissioner: “Chapter 24, Section 25.0, entitled Speedometer Tests. Speedometers of vehicles assigned to motorcycle precinct number one and all radio motor patrol and other cars assigned to enforce speed regulations shall be tested each 15-day period on the speedometer testing machine located at motorcycle precinct number one, except that the speedometers of apprehending vehicles assigned to speed enforcement radar units shall be tested once each week. Speedometers of motorcycles assigned to motorcycle precinct number two and Grand Central Parkway precinct shall be tested each 15-day period by comparison with the master speedometer located at their respective commands. All speedometer tests shall be conducted in the presence of the operator of the vehicle and only by members of the force competent to perform such tests.
“ Section 25.1. If the speedometer is found to be accurate the date and signature of the member of the force witnessing the test will be written immediately following the test in the appropriate spaces on U.F. 62-a (record of the speedometer test) which contain the Police Department identification number of the vehicle. The U.F. 62-a will be filed in the command to which the vehicle is assigned.
“ Section 25.2. When the test shows that the speedometer is inaccurate, the central repair shop shall be notified and the vehicle delivered as directed. When the speedometer is repaired, the operator of the vehicle will comply with 25.1.
“ Section 25.3. The master speedometer assigned to each motorcycle precinct except motorcycle precinct number one shall be delivered to test once in each three-month period to the authorized speedometer testing station. A certificate of accuracy shall be obtained for the precinct file. The engineering-bureau shall arrange to test and issue a certificate of accuracy in duplicate for the speedometer testing machine in motorcycle precinct number one. These certificates shall be filed in motorcycle precinct number one for reference.”
*1071 Section 392 of the Code of Criminal Procedure provides that the rules of evidence in civil cases are applicable also to criminal cases.
Recently in the case of People v. Heyser (2 N Y 2d 390) the Court of Appeals reaffirmed the principle that the reading of an untested speedometer, standing alone, is insufficient to sustain a conviction for speeding. The same ease is authority, however, for the proposition that a conviction could be sustained if the patrolman qualified by virtue of his tested experience to estimate the speed of motor vehicles and, of course, had opportunity to observe the defendant’s vehicle.
In the instant case the summonsing officer was not qualified as an expert and hence was not asked his opinion.
Early in common law, the shop book rule was devised as an exception to the rule against hearsay. This rule was adopted at a time when a party in interest could not testify in his own behalf, but the rule remained after that disqualification was removed. (Smith v. Smith, 163 N. Y., 168; Tomlinson v. Borst, 30 Barb. 42.) As commerce expanded, and business organizations were no longer run by one shopkeeper, it was necessary to enlarge the rule to admit book entries that were made in the regular course of business. Under this rule, the book entries were admissible only when it could be shown that the entry was made in the regular course of business by one in discharge of his duty, or in the regular course of his employment. The transaction also had to be recorded reasonably near the time it occurred, and it had to be proved that the entrant had personal knowledge of the transaction or that he received the information from one who had the personal knowledge and the duty to make such report. (Mayor v. Second Ave. R. R. Co., 102 N. Y. 572.)
There could be no doubt that these old rules were too antiquated to keep apace with progress and finally in 1928 the Legislature enacted section 374-a into the Civil Practice Act. This section reads simply and clearly but nevertheless, has been the subject of much litigation. In its present form, it begins as follows:
“§ 374-a. Admissibility of certain written records. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such *1072 act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility.”
“ The purpose of the Legislature in enacting section 374-a [Civ. Prac. Act] was to admit in evidence a writing or record made in the regular course of business without the necessity of calling as witnesses all those who had a part in making it.” (Richardson on Evidence, 7th ed., p. 231.)
Based on said section, the Court of Appeals soon held that those portions of hospital records that contained treatment, prognosis and diagnosis were admissible in evidence. (People v. Kohlmeyer, 284 N. Y. 366; Meiselman v. Crown Heights Hosp., 285 N. Y. 389.)
Police blotters were rightfully excluded because they only contained the memorandum of policemen obtained from alleged witnesses. (Johnson v. Lutz, 253 N. Y. 124.) An attempt was made to introduce the history in hospital records even though this information was many times obtained from third persons, and it was not the duty of the hospital doctors or employees to investigate an accident or obtain particulars that had nothing to do with medical treatment. This procedure was stopped by the Court of Appeals in its famous decision in the ease of Williams v. Alexander (309 N. Y. 283).
The electro-encephalogram report, however, of a doctor is admissible in evidence under this rule. (Mayole v. Crystal & Son, 266 App. Div. 1008.)
The reports of other governmental officials have found their way into evidence. In Duffy v. 42nd St. Manhattanville & St. Nicholas Ave. Ry. Co. (266 App. Div. 865) it was held that a death certificate is properly admitted in evidence. While in Iovino v. Green Bus Lines (277 App. Div. 1002) a judgment was reversed because the report of the toxicologist as to the quantity of alcohol found in the brain of the deceased, was excluded from evidence. The Appellate Division stated (p. 1003): “The report was made pursuant to law and in the regular course of business.”
In the case of People v. Marsellus (4 Misc 2d 210) it was held-that a certificate offered in evidence under section 374-a of the Civil Practice Act was inadmissible because it was made by an outside agency and not by the police department. The court in that case indicated that had the certificate been made by a police agency that the same may have been admitted under section 374-a. But an even stronger indication of its admis *1073 sibility may be gleaned from a reading of People v. Boehme (1 Misc 2d 629, 630-631) which stated:
‘ ‘ Section 374-a of the Civil Practice Act, permitting entries made in the regular course of business to be introduced in evidence, might apply to a record of a routine test made by the police department. The certificate in this case did not relate, however, to a transaction or occurrence conducted by the police department but rather to a transaction conducted by a third party, the hearsay results of which were produced by the police department.
‘ ‘ This court does not intend by this decision to lay down a rule that such test certificates as here introduced are inadmissible under any circumstances but simply that the proper foundation was not laid for the introduction of this test certificate in evidence.”
In People v. Lederle (206 Misc. 244) City Magistrate J. Irwin Shapiro found himself confronted with the problem of whether the report of inspections made by an inspector of the department of housing and buildings of the City of New York in the regular course of his duties as inspector and which records showed a violation of the Administrative Code of the City of New York were admissible under sections 367 and 374-a of the Civil Practice Act.
The learned Magistrate, after reviewing the authorities, held that these records were admissible in evidence without the production in court of the persons making the inspection and filing the report.
In the case of People v. Nisonoff (293 N. Y. 597) which involved a homicide case and the use of the autopsy findings of an assistant medical examiner, who had died prior to trial, the opinion of Conway, J. (all other Judges concurring) contained the following: “ Civil Practice Act, section 367, now provides, and so provided prior to the adoption of our Constitution of 1938, as follows: ‘ Certificate of officer as evidence of facts. Where a public officer is required or authorized, by special provision of law, to make a certificate or an affidavit touching an act performed by him, or to a fact ascertained by him, in the course of his official duty; and to file or deposit it in a public office of the state; the certificate or affidavit so filed or deposited, or an exemplified copy thereof, is presumptive evidence of the facts therein alleged, except where the effect thereof is declared or regulated by special provision of law. ’ ” (P. 601.)
Section 367 is inapplicable in the instant case because the speedometer test records are not deposited in a public office. *1074 It is indicative, however, of the trend to admit official records kept in the regular course of business.
This case recently decided by the Court of Appeals further held with respect to the important rights of confrontation, and cross-examination as follows (pp. 601-602):
“ The right of confrontation imports and confers the right of cross-examination. When that right was added to our State Constitution, there was eliminated the possibility of its deprivation by legislative act. When we interpret that addition to the Constitution, we must do so in the light of the law as it existed at the time of the change. Any exceptions to the right of confrontation or cross-examination existing prior to the adoption of the State constitutional provision and not contrary to its spirit, must be respected. (Mattox v. United States, 156 U. S. 237, 243.) In that case, speaking of the Constitution of the United States, the court used the following language (p. 243), which is particularly applicable here: “We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject — such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a Bill of Rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant.
“ The right of an accused in a criminal action to be confronted by the witnesses who testify against him, is not violated by the introduction of so-called public documents or official records required to be kept. (Heike v. United States, 192 F. 83, 94, 95, affd. 227 U. S. 131; Commonwealth v. Slavski, 245 Mass. 405, 414, 415, 417; People v. Reese [1932], 258 N. Y. 89, 96; People v. Corey, 157 N. Y. 332; 5 Wigmore on Evidence, § 1398, pp. 136, 141, 142; Richardson on Evidence [6th ed.], §§ 615, 616, 646, 647.) ”
In the case of People v. Magri (3 N Y 2d 562) recently decided by the Court of Appeals, our highest court held that the time had come to recognize the general reliability of the radar speed meter as a device for measuring the speed of a moving vehicle. It dispensed with the necessary of requiring expert testimony in radar cases as to the nature, function or scientific principle *1075 underlying radar. It held further that (p. 566): “Almost daily, reproductions by photography (once questioned, see Cowley v. People, 83 N. Y. 464 [1881]), X-rays, electroencephalograms, electrocardiograms, speedometer readings, time by watches and clocks, identity by fingerprinting, and ballistic evidence, among a variety of kindred scientific methods, are freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying them. The use of radar for speed detection may now be said to fall in this category.”
In People v. Tyler (109 N. Y. S. 2d 756, 757 [Ct. of Spec. Sess. of N. Y. C., App. Part, 1st Dept., N. Y. County, 1952]) the court held: “Proof of accuracy [of the speedometer] carried back to the proof of the accuracy of the master speedometer and all of its parts is not necessary in speed prosecutions.”
To require the appearance of a second witness at a trial for a speeding violation who testifies, not as a mechanic or expert, but merely as a witness to the routine testing of the speedometer in the police vehicle against the master speedometer is to perpetuate a work of supererogation.
Confrontation does not connote the mere opportunity to gaze upon a witness but to subject him to the test of cross-examination, and in this manner, develop any inaccuracies or untrustworthiness which may lie beneath the bare untested assertion of a witness.
The security afforded defendants generally to the right of cross-examination is, in this instance, superfluous. In most instances this court has found that the right to cross-examination of the speedometer witness has been waived, and when exercised before this court, has yet to result in an impairment of the witnesses’ observation of the routine mechanical test. Consequently, in the opinion of this court, we may now accept the scientific reliability of speedometer tests of motor vehicles made by our police department against their master speedometer in keeping with the trend established in the case of People v. Magri (supra).
In the opinion of this court, the proof offered at this trial, consisting of the summonsing officer’s observation supported by official records of the police department as to the accuracy of the speedometer in his vehicle, is far more persuasive than the proof presently deemed sufficient by virtue of the Heyser case (supra) consisting of the officer’s observation of his untested speedometer and supported by the opinion evidence of himself and/or another estimating the speed of the motorist’s vehicle.
*1076 These speedometer tests are made in the regular course of business. They are made pursuant to duty imposed by the police commissioner in conformity with duly constituted authority, supra. Their duties, in turn, are subject to supervision by their superiors.
This court feels that our Legislature enacted section 374-a of the Civil Practice Act for the very purposes encountered in this trial.
The motion of counsel for the defendant to dismiss the complaint because the People have failed to prove their case beyond a reasonable doubt is denied. The defendant is found guilty.