EugFne B. Canudo, J.
Many, many auto larceny prosecutions fall by the wayside because automobile owners who have been compensated for their stolen cars or who have recovered such cars lose interest and fail to show up in court. On the other hand, many good citizens lose time from work and wait around for hours at'a time, waiting to be called to testify at preliminary hearings, before grand juries, and at trials, receiving no compensation from any source for lost time and earnings. District Attorneys frequently forfeit cases for failure to prosecute them, because the car owner is unavailable or unwilling to appear. Many other cases are reduced from felonies to misdemeanors — even though they involve late model cars worth thousands of dollars — because the prosecutor finds it necessary to bargain *507 away a felony prosecution in return for the defendant’s stipulation that the owner, if called, would testify that he owned the car and gave no permission to the accused to take possession of it.
Tradition, rather than law, seems to have guided prosecutors and Judg’es in determining- their course of action in such cases. All too often, District Attorneys honestly believe that, absent the owner or a stipulation as to his testimony, the prosecution must fail. It would appear that they have surrendered too easily.
The cáse at hand frames the precise issue. The complainant, at 8:15 on the morning of August 29, reported to the 107th precinct that at 8 o’clock he looked for his two-door, 1972 Mercury in front of his house, where he had parked it, and could not find it. The value of the car, he reported, was $5,500. An official report was made and an alarm was transmitted over police wires, and the report form (formerly known as the UF 61 and now designated as a PD 313-152) was filed in the usual places, in accordance with official Police Department procedure.
At 3 a.m. on August 30 two uniformed officers on regular patrol duty saw a car careening and swerving* down a hill at a high rate of speed, apparently out of control. It hit a concrete post and was instantly enveloped in a large cloud of dust and smoke. Three males ran from the car, one from the driver’s side and two from the passenger side. The officers gave chase And caught the defendant, who had exited from the passenger side. The other two got away. After making radio inquiry from their patrol car, they placed the defendant under arrest for larceny as a felony, criminal possession of stolen property, and unauthorized use of a motor vehicle.
The owner was notified. He came to court and signed the official complaint which is now before the court. He failed to appear again, and this preliminary hearing- has been held in his absence. The District Attorney elicited the arresting officer’s testimony as to his observations (described above) and his actions. The prosecutor then offered in evidence the Police Department complaint report (the PD 313-152), which the arresting officer, before coming into court, had personally obtained from the officer in charge of the clerical files at the 107th precinct. The report relates the ownership and the larceny of the car, describes the vehicle and states its value, gives the registration and vehicle identification number and other particulars. All of these facts had been supplied by the owner complainant, at the time he reported the loss of his ear. While still under oath, the arresting officer, a veteran of 15 years, *508 described in some detail the procedure followed in all such cases in the preparation, filing and maintaining of PD 313-152’s.
Over the defendant’s objection, I have admitted the PD 313-152 under the business entry exception to the rule against hearsay. CPLR 4518 (subd. [a]) says: “ Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event; shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular bourse of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.”
There is ample precedent for the admission of police records into evidence under this exception. The issue arose not long ago in the case of People v. Foster (27 N Y 2d 47, 51-52), which involved the admissibility of a speedometer deviation record to prove the reliability of a speedometer used to clock the speed of the defendant’s car. “ Although such a record is considered. hearsay,” said the court, “it is admissible under the business ehtry exception to the hearsay rule * * * If the Officer is able to testify that the deviation record was made in the ordinary course of police business of maintaining highway safety, and that it was the regular course of police business to make such a record, the record would be admissible.” Certainly, the day-to-day preparation, use and filing of official records of automobile! thefts is a vital part of a police department’s operations.
This report, unlike the situation that was found in Johnson v. Lutz (253 N. Y. 124), Cox v. State of New York (3 N Y 2d 693), and People v. Samuels (302 N. Y. 163), recited essential information given to the police by one who not only had intimate knowledge of the facts (see Kelly v. Wasserman, 5 N Y 2d 425), but also had the right and the obligation to report this crime. The information was reported within minutes after the loss was discovered. According to the PD 313-152, the alarm went out the same day.
Insofar as the defendant’s complicity in the crimes is Concerned,! it is well established in this State that recent and exclusive possession of the fruits of a crime, if unexplained, justifies the inference that the possession is criminal (People v. Galbo, *509 218 N. Y. 283; People v. Everett, 10 N Y 2d 500, cert. den. 370 U. S. 963). The inference is one of fact, to be determined by the trier of the facts in the light of all the circumstances of the case. In People v. McCaleb (25 N Y 2d 394), the unexplained use of, or presence in, a stolen automobile was held to be sufficient to justify the presumption that such possession was with the knowledge of the occupants. In the case at bar, the possession of the 1972 Mercury was clearly established. The defendant and his companions obviously had exclusive possession, without authorization, the very next morning after the loss was discovered. The term “ recent ”, which is not spelled out in hours or minutes, certainly would seem to apply here.
Where a rebuttable presumption of law, such as this one, is not repelled, it is required that the presumed fact be found. The defendant chose not to testify at the preliminary hearing, although he had a right to do so (CPL 180.60, subd. 6). Nor did he offer to produce any witnesses. If there should be an innocent explanation for his presence in the car, or if he should be in a position to show that he was not involved in the larceny, he will be given every opportunity to present such facts if, as and when the case goes to trial.
The prosecution has shown, at this hearing, that reasonable cause exists to believe that the defendant committed the crimes with which he has been charged (CPL 180.70, subd. 1). The motion to dismiss the complaint is therefore denied, and the defendant is held for action of the Grand Jury.