THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
WILLIAM L. PORTER, Appellant.

Third Department, December 23, 1974.

*George E. Abdella* for appellant.

*Robert L. Maider, District Attorney,* for respondent.

COOKE, J. At approximately midnight of May 26, 1973, the
vehicle which defendant was driving was involved in a head-on
collision with an automobile operated by Bonita Catucci on
Route 30A in the City of Gloversville. Miss Catucci was killed
and defendant seriously injured in the crash. At approximately
12:15 A.M. on May 27, 1973, defendant was taken to the emer-
gency room of Nathan Littauer Hospital and, shortly thereafter,
Lieutenant Ralbovsky arrived. He testified that defendant

smelled of alcohol and that he informed defendant that he was going to be arrested for driving while intoxicated and requested him to submit to a blood test. Defendant refused at first and he was then warned that his failure to submit to the test would result in the automatic loss of his license. Dr. D'Errico also spoke to the defendant to impress upon him the seriousness of the situation and defendant consented to the test.

Barbara Svolos, a registered nurse, thereupon extracted a quantity of blood and placed it in a test tube which she immediately gave to the lieutenant. There is evidence in the record that the blood sample was extracted at approximately 1:15 A.M. on May 27, 1973. Ralbovsky placed the test tube in his pants pocket and later took it to the police station where he sealed it and locked it in the " money drawer ". Sometime later, he personally delivered the sealed test tube to the chemist, Charles Ackerbauer, and obtained a receipt. Ralbovsky subsequently received a certificate of analysis from Ackerbauer stating that there was .21% of alcohol, by weight, in the blood sample, and specifying the method of analysis.

On June 14, 1973 defendant was indicted by the Fulton County Grand Jury for manslaughter in the second degree, criminally negligent homicide, driving while intoxicated and operating a motor vehicle while having .1 of 1% or more, by weight, of alcohol in his blood. On October 23, 1973, said indictment was dismissed, over defendant's objection, upon oral motion of the District Attorney, on the ground that a witness with exculpatory evidence, known to the prosecution, had not been called to testify before the Grand Jury which indicted defendant. Permission to resubmit the matter to the Grand Jury was granted and defendant was subsequently reindicted on the same charges enumerated earlier with the exception of manslaughter in the second degree.

Prior to trial, defendant unsuccessfully moved to suppress the results of the blood test on grounds which have been resurrected on this appeal and are detailed later in this opinion. A jury trial commenced on May 8, 1974, during the course of which several witnesses, including Lieutenant Ralbovsky, Dr. D'Errico and Nurse Svolos, testified that defendant smelled of alcohol, was belligerent, and used abusive language while in the emergency room. There is also evidence in the record that, shortly before the fatal collision, defendant was speeding. Other witnesses testified that Bonita Catucci and her passenger, Jill Nadborny, had shared between 5 and 10 marijuana cigarettes with three other persons shortly before the fatal accident.

During the trial, an unforeseeable difficulty arose in proving the results of the blood test. The chemist who performed the test died on May 12, 1974 while the trial was in progress. Deprived of his testimony, the People sought to introduce in evidence his records of the analysis of the blood sample. The chemist's son, who had been employed in the laboratory for seven years and was then so employed, was called as a witness and he testified to his father's qualifications, stating that the latter had performed several hundred blood tests in the course of his business. He further testified that his father kept a log of every test he performed and placed a check mark next to each entry as payment for the services was received. He had observed his father perform at least a dozen tests and it was the latter's practice to record the results of the test immediately upon completion thereof. No other notes were made. The log book was then introduced into evidence over defendant's objection, the witness having identified the handwriting as that of his father. The entry dated May 27, 1973 with defendant's name written next to it states: "Narcotics Neg. Hallucinogens Neg. No test for marihuana". Certain mathematical computations follow and at the extreme right hand side of the page is the figure .21%.

Upon *voir dire* examination prior to the admission of said records into evidence, defendant's attorney pointed out that not all entries in the log appear in chronological order. The next witness called was a chemist employed at the New York State Police Laboratory who testified that he had performed over 5,000 blood tests and that the method of analysis used by Ackerbauer was a scientifically accepted method. He recognized the method of notation in the deceased chemist's records as a standard method and stated that, if the measurements recorded were taken accurately, the conclusion was merely a matter of mathematical computation.

At the conclusion of the trial, the jury returned a verdict of guilty of driving while intoxicated and defendant was sentenced to one year of imprisonment in the Fulton County Jail. Defendant raises a host of challenges to his conviction which can be classified into four basic arguments: first, that it was error to permit the District Attorney to resubmit the matter to the Grand Jury; second, that the blood sample was illegally obtained and the results of the blood test were erroneously admitted into evidence; third, that the Trial Judge improperly restricted the defense in its attempt to show bias on the part of Lieutenant

Ralbovsky; and finally, that the verdict was against the weight of the evidence.

Since we are of the opinion that defendant's guilt of driving while intoxicated was amply established by the testimony of the witnesses at trial, it only remains to be considered whether such legal errors were committed as to deprive defendant of a fair trial.

The most substantial of defendant's arguments challenging his conviction relate to the taking of the blood sample and the introduction into evidence of records of the blood test. He claims that he did not voluntarily and expressly consent to the taking of the blood sample; that he had not been placed under arrest within two hours prior to the taking of the sample; that the chain of possession of the sample was not adequately established; and that the accuracy of the blood test could not be established by a business record without depriving him of his constitutional right to confrontation and cross-examination of witnesses against him.

Subdivision 1 of section 1194 of the Vehicle and Traffic Law deems the operation of a motor vehicle in this State to be consent to a chemical test for alcoholic content of the operator's blood. While defendant negated this consent by initially exercising his statutory right to refuse to submit to the test, he relented upon being informed of the consequences of his refusal. Defendant was conscious and coherent at the time of his consent which was expressly given according to the testimony of all present in the emergency room. His claim that he was not placed under arrest within two hours prior to the extraction of the blood sample is belied by the record which clearly indicates that he was arrested in the emergency room. It was not necessary or reasonable, under the circumstances, for the police officer to do more than exercise his lawful authority over defendant by informing him of the charge against him. The extraction of the blood sample took place shortly thereafter and well within the two-hour period.

The chain of possession of the blood sample was adequately established to provide a reasonable guarantee of identity and unchanged condition under the circumstances. Usually, the unbroken chain of possession is demonstrated by calling each person who has had access to or possession of the evidence to establish identity and unchanged condition. Such testimony is generally insisted upon particularly where the sole proof of guilt rests upon chemical analysis of a blood specimen or drug and where such proof is available (see *People* v. *Sansalone*,

208 Misc. 491, 493). However where the circumstances provide reasonable assurances of identity and unchanged condition and it would be impossible or an unreasonable requirement to produce each physical custodian as a witness, there has been a relaxation of the rule (cf. *People* v. *Jamison,* 29 A D 2d 973 [postal employees who handled mailed narcotics not called] and *People* v. *Goedkoop,* 26 Misc 2d 785, with *People* v. *Turcsik,* 43 A D 2d 777, app. dsmd. 34 N Y 2d 985).

In this case, the only period unaccounted for because of the death of the chemist is the brief interlude between the delivery of the sample to the chemist and his analysis of it. There is no question of the identity or condition of the sample *received* by Ackerbauer (cf. *People* v. *Turcsik, supra*). According to the exhibits, Lieutenant Ralbovsky delivered the sealed test tube to him on May 27, 1973, the day the blood sample was obtained from the defendant, and he analyzed it later that day. Apparently, Ackerbauer and his son were the only employees at the laboratory and the latter testified that he did not handle blood tests. Thus, it is highly improbable that the sample underwent a change of identity or condition during this brief period prior to analysis.

Unlike the situation in *Durham* v. *Melly* (14 A D 2d 389, 393), the sample here was delivered directly to the chemist who performed the analysis and, in the absence of any evidence giving rise to a reasonable belief that the condition of the sample may have changed in that short interval, we must find the chain of possession was adequately established under all the circumstances.

We are satisfied that the business records of the deceased chemist were properly admitted into evidence. Ackerbauer's son and coemployee's testimony established an adequate foundation to qualify said records as a business entry exception to the hearsay rule (CPLR 4518, subd. [a]; CPL 60.10. See *Rodririguez* v. *Zampella,* 42 A D 2d 805; *Jezowski* v. *Beach,* 59 Misc 2d 224; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par 4518.09, n. 48b). We note that the result of the standard and scientifically accepted test was the product of a simple mathematical computation (see *Thomas* v. *Hogan,* 308 F. 2d 355, 360–361; *Matter of Brown* v. *Murphy,* 43 A D 2d 524).

The fact that some of the entries in the records were out of chronological order affects the weight to be given to the evidence but not its admissibility (cf. *Thomas* v. *Hogan, supra;* *United States* v. *New York Foreign Trade Zone Operators,* 304 F. 2d 792, 797–798). It is also noteworthy that there was nothing

irregular about this particular entry and that it appeared in proper chronological order.

Although admission of such records obviously impaired defendant's rights of confrontation and cross-examination, it did not violate his constitutional rights in these respects (see *People* v. *Nisonoff*, 293 N. Y. 597). Indeed the procedure followed in the instant case closely parallels that in *Nisonoff*, although the records involved here are not public records. The court in *Nisonoff* recognized that the holding there was not strictly limited to public records (p. 604) and its extension to this case is a logical outgrowth of the reasoning therein (cf. *Kuklis* v. *Hancock*, 428 F. 2d 608, 612–613).

The chemist's business records were admissible not only to establish that he did perform the test but also to establish the accuracy of said tests (*United States* v. *Ware*, 247 F. 2d 698. Cf. *People* v. *Foster*, 27 N Y 2d 47; *People* v. *Richardson*, 38 A D 2d 990). The possibility that the chemist may not have been properly qualified or may have performed the test erroneously affects the weight to be given to such evidence but not its admissibility (*Thomas* v. *Hogan*, 308 F. 2d 355, 360–361, *supra; United States* v. *New York Foreign Trade Zone Operators*, 304 F. 2d 792, 797–798, *supra*), unless when such evidence is offered the showing of unreliability is complete (*Thomas* v. *Hogan, supra*).

In sum, while it is normally advisable, if not necessary, to produce the chemist in cases where a chemical test is arguably an important factor in a jury verdict, there must be some flexibility in the law to accommodate an unusual situation such as this where mindless adherence to rigid rules would ill serve the interests of justice. The death of the chemist here was unforeseeable, the test could not be duplicated. Yet there existed adequate assurances of reliability of the results of the simple and scientifically accepted tests (see *Thomas* v. *Hogan, supra*). From the evidence elicited at trial, it is clear that, given the physical findings of the deceased tester, the conclusion to be drawn was not a matter of judgment but merely one of mathematical computation (*Kuklis* v. *Hancock*, 428 F. 2d 608, *supra*). In addition, the test results were not the sole proof of intoxication (cf. *People* v. *Sansalone*, 208 Misc. 491, 493, *supra*) and may not even have been necessary to sustain the verdict.

Turning to defendant's remaining contentions, there is no requirement in the CPL that the prosecution's motion to dismiss an indictment must be in writing. A hearing on said motion was had and the court's reasons, which fully support its decision, are

recited in the record (see CPL 210.40, subd. 2). The argument that this decision of the court was erroneous is without merit.

The error, if any, in restricting an attempt by defendant to show the alleged bias of Lieutenant Ralbovsky through the questioning of Leonard Whitman, was harmless beyond a reasonable doubt since the witness' contradicting testimony was already in the record and the long, neighborly relationship of Ralbovsky and the dead girl's father had been presented to the jury.

The judgment should be affirmed.

HERLIHY, P. J., GREENBLOTT, KANE and REYNOLDS, JJ., concur:

Judgment affirmed.