Nanette Dembitz, J.
The issue of law in the instant juvenile delinquency proceeding is the admissibility at trial of a report on heroin content of a seized substance, certified by a chemist of the police department’s crime laboratory, without the testimony iof such chemist. This question, which must be determined herein on the same basis as in a criminal prosecution, does not appear to have received a definitive answer in the courts of this State.[1]
*518 The juvenile delinquency petition against the 15-year-old respondent herein charged that he “ handed ” a glassine envelope containing heroin to another juvenile; that he “ had in his possession ” eight large glassine envelopes of heroin; and that these acts, if done by an adult would constitute crimes within the meaning of sections 220.03 and 220.39 of the Penal Law.
Respondent’s counsel moved to suppress the substance allegedly seized from respondent. This court, after hearing, denied the motion on the ground that respondent had been validly arrested on probable cause and that the seizure of the alleged heroin from his jacket pocket was a lawful consequence of his arrest. Then, ¡Corporation ¡Counsel on ¡behalf of the petitioner policeman offered in evidence the police laboratory report on the chemical analysis of the seized substance. Respondent objected to the admission of such report, unless the certifying chemist appeared as a witness. The objection was overruled, subject however to reconsideration on the basis of memoranda of law that the parties were, at respondent’s request, given leave to submit. Respondent then rested. This court reassert^ its ruling on admissibility on both statutory and constitutional grounds.
1. Statutory authority for admission of report.
On the basis of the precedents .and principles discussed below, the chemist’s certified report is admissible without his testimony under the general “business record” exception to the rule against hearsay (CPLR 4518, subd. [a]), as well as the exception for a record certified by an employee of a department or bureau of a ¡municipal corporation (/CPLR 4518, subd. [c] and 2307, subd. [a]), and the exception for a certificate of a public officer (CPLR 4520). These CPLR provisions — undoubtedly applicable despite the criminal nature of this proceeding[2] — overlap in coverage of the instant report.[3]
*519 (a) Reports on Drug 'Content.
In Iovino v. Green Bus Lines (277 App. Div. 1002, 1003), the court held: “ It was error to exclude the report of the toxicologist as to the quantity of alcohol found in the brain of the deceased. * * * The report was made pursuant to law and in the regular course of business. ” See Hayes v. City of New York (23 A D 2d 832), which followed Iovino; also Cook v. Town of Nassau (33 N Y 2d 7, 10) stating that “Those cases [Hayes and Iovino] indeed advanced forceful reasons why this evidence should ibe made ¡available.5 ’ In addition, Matter of Robert P. (40 A D 2d 638) clearly implies that a report on drug content, certified in .accordance with the established procedure of the police department, is admissible under OPLR 4518 (subd. [c]) without the certifier’s testimony, though it fails to hold definitively on this issue for extraneous reasons.[4]
"While research discloses no other discussion by this State’s appellate courts of the precise point, holdings elsewhere are clear and strong to the effect that official reports of drug analyses are admissible ¡without the testimony of the analyst, under provisions highly similar to the CPLR, Thus, in United States v. Frattini (501 F. 2d 1234 [C.A. 2d 1974]), a prosecution for distributing and possessing cocaine, a chemist’s report on the. cocaine content of the substance seized from the defendant was introduced in evidence without the testimony of the chemist. The appellate court held (p. 1236) under a general business record statute like CPLR 4518 (subd. [a]) that the “ chemist’s report was admissible under the business records exception to the hearsay prohibition.” Frattini relied on United States v. Ware (247 F. 2d 698, 699-700 [C.A. 7th]), a prosecution for concealment and sale of heroin, where the court said: ‘ ‘ We think there can be no doubt that the exhibits or memoranda made by the chemist were admissible as having been made in the regular course of business and that it was the regular course of business to make such memoranda or record of the findings of the chemist’s analyses of .the substances purchased from the defendant. * * * These exhibits also satisfy the underlying reason for this exception to the hearsay rule and the admission *520 of this class of statements under section 1732 — the probability of .their trustworthiness.’’ To the same effect: Kay v. United States (255 F. 2d 476, 480-481 [C. A. 6th]), where the court upheld a conviction for drunken driving based on a medical examiner’s certificate as to the .alcoholic content of defendant’s blood.
(lb) NEW YORK HOLDINGS ON REPORTS OF SCIENTIFIC FINDINGS, SIMILAR TO DRUG ANALYSES.
The 'Court of Appeals has squarely ruled that reports comparable to the instant one are admissible under the iCPLB exceptions to the hearsay rule. In People v. Nisonoff (293 N. Y. 597) a manslaughter conviction, the Court of Appeals upheld the admission in evidence of an autopsy report by a city medical examiner without his testimony, relying on the statute which is now CPLB 4520. Here as there the report in issue was an “ official record(s) required to be kept [p. 602] * * * filed in a public office by a public officer for a public purpose ” (p. 604); and there as here “ a fact ascertained, .or [the] * * * act performed by him in the course of ¡Ms official duty ” (p. 601) was a scientific finding. Nisonoff was foreshadowed by People v. Kohlmeyer (284 N. Y. 366, 369-370) which upheld under the business record rule the admission in a robbery prosecution of hospital reports as to a patient’s diagnosis, the court stating that: “ the diagnosis were ‘records of an act, transaction, occurrence ior event made in the course of the doctor’s profession ’ or the scientific deductions therefrom. * * * We fail to see why the recorded conclusions of the hospital physicians on scientific matters should be deemed objectionable on any ground when they would not be .objectionable were the physician whose diagnosis is contained in the record called personally to the witness stand.”
.See, also, People v. Hampton (38 A D 2d 772, 773) upholding the admission of an autopsy report in a manslaughter prosecution un the basis that: “ It is an established principle of law that certain public records may be received into evidence without offending the hearsay rule or right of confrontation ” Gioia v. State of New York (22 A D 2d 181, 184), upholding admission under CPLB 4520 of certificate diagnosing cause of death as “ asphyxiation by strangulation while temporarily insane Mayole v. Crystal & Son (266 App. Div. 1008), uphold *521 ing admission of electroencephalogram as record made in regular course of ¡business.[5]
The foregoing authorities control the admissibility of the instant report, there being no valid basis for distinguishing them. Further, the instant type of report meets the underlying standards for admissibility under COPLR 4518 and 4520: the reporter (the chemist) .was the witness of the reported observation (see Johnson v. Lutz, 253 N. Y. 124; Felice v. Long Is. R. R. Co., 426 F. 2d 192, 196-197 [C. A. 2d]); Toll v. State of New York, 32 A D 2d 47, 49); and since “ the records concern public affairs, and do not affect the private interest of the officer, they are not tainted by the suspicion of private advantage.” (Chesapeake & Del. Canal Co. v. United States, 240 F. 903, 907, affd. 250 U. S. 123.)[6]
II. CONSTITUTIONALITY OF ADMISSION OF CHEMIST’S REPORT WITHOUT CONFRONTATION OF CHEMIST.
The precedents clearly establish the constitutionality of admitting the instant laboratory report (without the appearance of the certifying chemist. In upholding the admission of an autopsy report, the 'Court of Appeals held: “ The right of an accused in a criminal action to be confronted by the witnesses who testify against him, is not violated by the introduction of so-called public documents or official records required to be kept ” (People v. Nisonoff, 293 N. Y. 597, 602).
While research discloses no other appellate discussion in this State of the constitutionality of the admission in a criminal or quasi-criminal trial of scientific analyses, the highest courts in *522 other jurisdictions have passed squarely on the issue in relation to drug content reports.[7]
In holding constitutional the admission of a chemist’s report on alcoholic content, as against an objection 1 ‘ upon the ground that the accused was entitled to be confronted by the witness (the ¡State chemist) * * * and to cross-examine him in order to determine the accuracy of his .analysis,” the highest court of a .sister .State held: “ The public source from which the copy of the record before us came, the manner in which and the purpose for which it was made, and the complete absence of motive to warp the truth, take the place of that greatest aid to the trustworthiness of evidence, the .right of cross-examination ” (State v. Torello, 103 Conn. 511, 512, 520). Similarly upholding the constitutionality of the admission in a criminal prosecution of a public employee’s certificate .as to alcoholic content, without his testimony: Kay v. United States (255 F. 2d 476, 480-481 [C. A. 6th]); Bracy v. Commonwealth (119 Va. 867); Commonwealth v. Slavski (245 Mass. 405).
The .underlying principle was explained in Richardson v. Per-ales (402 U. S. 389, 403) where the court approved the admission of diagnostic reports by doctor employees ■ of a public agency, without the appearance of the doctors. Referring to the lack of personal ■“ interest on their part in the outcome,” (p. 403) and the consequent “ routine, standard, and unbiased ” (p. 404) character of their reports, the court held that the reports have .an “ underlying reliability and probative value ” (p. 402) and that there was therefore no violation of due process in relying upon them despite their hearsay character. The criterion is whether there are ‘[6] indicia of reliability * * * though there is no confrontation of the declarant ” (Dutton v. Evans, 400 U. S. 74, 89); for “ the mission of the Confrontation Clause is to .advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that ‘ the trier of fact [has] a satisfactory basis for evaluating the truth ’ ” (p. 89). As in the foregoing cases, the instant report has the ‘ ‘ indicia .of reliability ’ ’ in that it is a routine, impersonal report by a public employee.
¡Supporting the constitutionality of the admission of such a report, is the corollary to its reliability: that the testimony of the reporter chemist would contribute nothing of probative *523 value as to the drug content of the seized substance. It is impossible for ,a police laboratory chemist to recall the tests he performed and their results in an individual narcotics case of a routine ¡nature. Apposite is the comment of the Court of Appeals in upholding the admissibility of an “ official entry” as to a traffic violation, in lieu of the declarant policeman’s testimony, “ that a traffic policeman ¡who issues a large number of summonses for routine violations * * * will ibe hard put to remember the person of an individual operator, especially if there is a contest raised a considerable time after the summons is issued.” (People v. Klepper, 25 N Y 2d 46, 47.) Likewise discussing the futility of the appearance of the makers of routine official reports, another court pointed out: “ Their testimony [that of publicly-employed doctors] when produced is ordinarily a mere recital of what is contained in their reports, to which they must look for the purpose of refreshing the memory; and every one with experience in conducting litigation knows that as a matter of fact such reports are more reliable than the memory of the witnesses who made them” (Long v. United States, 59 F. 2d 602, 603-604). This court has made the same observation in each of the numerous drug cases tried before the instant one: that the chemist as a witness merely reads his report aloud.
Since the chemist is unable to recall the individual drug ease, he can only testify as to the drug tests customarily performed in the crime laboratory and as to his education and experience (cross-examination on these subjects has been routine in every drug case heretofore tried before this court). However, the court lacks the expertise to evaluate the adequacy of the prescribed procedures and tests, or to evaluate how much, if any, education and experience is necessary to perform them; nor could the court properly assume such an expert role. Rather, in view of the presumption of official regularity, the court must presume that the director of the crime laboratory[8] has duly performed his functions under the rules of the police department of assuring the
“ a. Technical competence of the technicians assigned to the Laboratory.
*524 “ b. Adequacy of technical procedures used in the Crime Laboratory.
‘ ‘ c. Development of new procedures for scientific analysis.
“ d. Technical efficiency of chemical tests conducted at the Laboratory.
“ e. Effective staffing of technical personnel and the procurement of equipment and supplies necessary for the proper functioning of the Crime Laboratory.”
(Rules cited supra, n. 3, § 113/2.)[9]
Relevant to the futility of cross-examining the chemist and to the constitutionality of reliance on his report without his appearance, are the 'Supreme Court’s words in upholding the admission of hearsay in a murder prosecution: “ And the possibility that cross-examination of Williams [the declarant] could conceivably have shown the jury that the statement, though made, might have been unreliable, was wholly unreal” (Dutton v. Evans, 400 U. S. 74, 89).
Accordingly, the chemist’s appearance is unnecessary from the standpoint of the Constitution and the right to a fair trial, its results being only delay and' inconvenience.[10] As to the need to utilize court procedures which expedite without interfering with legal and constitutional principles, see People v. Giesa (71 Misc 2d 506) and People v. Meyers (72 Misc 2d 1003) (opns. by Judges Canudo and Berger, respectively, of the Criminal Court of the City of New York, respecting the admission of various police reports).
III. WEIGHT ATTRIBUTABLE TO LABORATORY REPORT
Tn the event of a negative drug analysis of a substance tested in the crime laboratory, the laboratory report is so stamped in *525 large red letters (see Patrol Guide 114-115, issued by New York City Police Department Oct. 1, 1972).[11] In view of this documentary practice (which this court has observed) and in view of the presumption that the laboratory director has performed his prescribed function of insuring the accuracy of laboratory procedures, there is no reason to doubt the accuracy of the instant laboratory report. It constitutes proof beyond a reasonable doubt of the heroin content of the tested substance.[12]
Together with the evidence of respondent’s possession^ of the substance to which the laboratory report relates, the allegation that respondent committed acts which would if he were an adult constitute a violation of section 220.03 of the Penal Law, is proved beyond a reasonable doubt. Appropriate orders will be issued as to study of respondent and disposition.

. The lack of rulings may be due to the frequency of stipulation by defendants’ attorneys in criminal prosecutions as to the admissibility of laboratory reports on drug content. Legal Aid Society attorneys, who represent the great majority of juvenile delinquents in this court, have in this county for the past few years uniformly refused to so stipulate; and their insistence on the appearance of the certifying chemist has heretofore gone unchallenged.

. See GPL 60.10, providing that the rules of evidence governing civil cases are generally applicable to. criminal. “ It is exceedingly rare for the common law to make admissibility of evidence turn on whether the proceeding is civil or criminal in nature.” Dutton v. Evans, 400 U. S. 74, 97, n. 4, Harlan, J, concurring.)

. The report, one copy of Which is kept in the crime laboratory files, was certified by a chemist of the “crime laboratory section” established in the “scientific research division” of the police department [pursuant to rule 1/49.2 of the Police Department of New York City (amd. G. O. 9,s, 1969) promulgated under section 434 of the Charter of the City of New York. The report on a printed form headed “ Police Laboratory Analysis Report ” included identifying data as to the substance seized from respondent and stated that it consisted of: “8 envelopes — Heroin present in each — % oz. + 23 grains. Post analysis wt.: % oz. + 20 grains. Heroin ”.

. Matter of Brown v. Murphy (43 A D 2d 524), is dearly distinguishable. There the court held that reports as to drug content had been improperly admitted in a disciplinary proceeding against a policeman. However, the documents were “ one line summary reports ” of a “ medical unit ” (p. 525), rather than standard, complete, first-hand reports by chemists in the laboratory established by the police department rules.

. As to the variety of nonseientific reports of the police department admitted as records kept in the regular course of business, see e.g., People v. Klepper (25 N Y 2d 46, 48) upholding the conviction of a traffic violator whose identity was established solely by a police report without the appearance of the reporter or any testimony.

. CPL 190.30 (subd. 2), providing explicitly for the admission in grand jury proceedings of laboratory reports, should be deemed to support, rather than to contradict this conclusion. While this explicit prescription arguably implies the inadmissibility of the report at trial, a more likely inference is that the provision represents recognition that such a report is competent evidence in all proceedings (see CPL 190.30, 180.60, subd. 8; 670.10) and that the Legislature focused on the grand jury to overrule the effect thereon of People ex rel. Taylor v. Smalley (121 Mise. 331). CPL 190.30 (subd. 2) includes reports by a medical examiner along with reports by a chemist; certainly it was not intended to overrule People v. Nisonoff (supra).

. In People v. Pelusa (29 N Y 2d 605, 607) the court held constitutional the specific provision for the admission in grand jury proceedings of laboratory reports (see note 6 above) but did not address the question of their admission at trial.

. The director, a civilian, is appointed directly by the police commissioner, and his duties relate only to the scientific aspect of the laboratory. The commanding officer of the laboratory, by contrast, is responsible for the nontechnical staff and the security of the “ substances submitted for analysis ” (Rules cited supra n. 3, §§ 153/1,153/2).

. The presumption that the director performed his prescribed scientific functions does not preclude the defense from notifying petitioner of an intention to call an expert witness as to drug-content tests (which notification would necessitate testimony as to the crime laboratory’s procedures); nor does it preclude a defense application to obtain a portion of the seized drug for independent testing. However, no such notice or application has been suggested by the defense in any drug case in this court.
The conceptual possibility of such defense moves is no more persuasive against the admission of the instant report without the apperanee of the chemist, than it would be against an autopsy report (see Nisonoff, supra,, p. 7) or any of the reports of scientific findings held constitutionally admissible in the cases cited supra, pp. 7-8.

. See Richardson v. Perales (402 U. S. 389, 406) as to the waste of time occasioned by insistence on oral testimony instead of written reports in cases of the instant type.

. The department’s monthly statistics for 1974 show that the number of negative reports was on the average 7% of the total number of reports.

. In Richardson, (supra, p. 402) the diagnostic reports of publicly-employed doctors were deemed of sufficient weight to determine the outcome as against contradictory live medical testimony.