Nanette Dembitz, J.
A juvenile delinquency petition against the 15-year-old respondent alleged his possession of a .22-caliber revolver in violation of section 265.05 of the Penal Law, and the evidence proved beyond a reasonable doubt that he possessed a gun. The issue of law is whether the report of the Police Department’s laboratory as to the gun’s operability, certified on the official laboratory form in accordance with regular procedure, is admissible without the testimony of the certifying police officer.
In Matter of Kevin G. (80 Misc 2d 517), this court held, upon a review of appellate decisions in this and other jurisdictions, that a report of the Police Department’s laboratory on the heroin content of a seized substance is admissible under the CPLR exceptions to the hearsay rule, without the testimony of the certifying chemist. The Kevin G. reasoning, which is fully applicable to the instant ballistics report on operability, is supported by the subsequently published decision in People v Porter (46 AD2d 307). There, in a prosecution for manslaughter and driving while intoxicated, the court held that a chemist’s "log book” was admissible as a "business record” under CPLR 4518 (subd [a]) to establish the alcoholic content of the defendant’s blood, and that such admission, without an opportunity for defendant to confront the chemist, was constitutional. While it is true that in Porter (supra) the chemist had become unavailable through death, the court noted that fact in explaining the expediency of its ruling, not its legality.
*1083 1. Preparation of Report For Purpose of Litigation
Respondent attacks the admission of the ballistics report herein on the ground that it was "prepared for the purpose of litigation.” Such a limitation on admissibility has no application to reports which, like the instant one, are prepared by public employees. The city medical examiner’s autopsy report, admitted in a manslaughter prosecution without the examiner’s appearance in the leading case of People v Nisonoffi (293 NY 597), was as much prepared for the purpose of litigation as this ballistics report. (See, also, People v Hampton, 38 AD2d 772, for admission of an autopsy report.) Such autopsy reports by public officials are rendered for prosecutorial purposes on the basis of suspected criminality (Brown v Broome County, 8 NY2d 330, 332; Darcy v Presbyterian Hosp., 202 NY 259, 263-265; County Law, § 673; New York City Charter, § 1720, subd 6; Administrative Code of City of New York, § 878-3.0; indeed, the autopsy may "be considered the start of a judicial proceeding.” (Levine v Kiss, 47 AD2d 544.) Likewise prepared at the instance of the police for potential use in prosecution were the chemist’s reports on alcoholic or narcotic content of seized substances, admitted in evidence without the chemist’s appearance in Porter (supra); United States v Frattini (501 F2d 1234, 1236); United States v Ware (247 F2d 698, 699-700); Kay v United States (255 F2d 476, 480-481); Commonwealth v DiFrancesco (458 Pa 188, —; 329 A2d 204, 210); State v Larochelle (112 NH 392); State v Torello (103 Conn 511); Bracy v Commonwealth (119 Va 867); and Commonwealth v Slavski (245 Mass 405).
Palmer v Hoffman (318 US 109), cited by respondent, is wholly inapplicable. There it was held that a railroad which secured a statement from its engineer as to the circumstances of an accident in which he participated, could not put that statement in evidence in a negligence case against it. Obviously the routine report herein of a public laboratory is not tarred by the contrived, self-serving quality that inhered in the Palmer report.[1]
The other cases cited by respondent are likewise inapposite. In People v Roth (11 NY2d 80, 84), where the issue was the admissibility in regard to guilt of psychiatrists’ report on competency, the court explicitly ruled that their testimony *1084 and their report were equally inadmissible. In People v Samuels (302 NY 163, 171), the court merely held that opinions relative to defendant’s sanity, though physically attached to a hospital record, had been improperly admitted as a part thereof, the court stressing that they were vague, unreliable, and attributable to laymen unconnected with the hospital.
People v Foster (27 NY2d 47), though also cited by respondent, in fact supports the admissibility of the instant ballistics operability report. In Foster (pp 51-52), where the defendant was convicted of driving at excessive speed, a "speedometer deviation test record” as to the arresting officer’s speedometer was held admissible without the testimony of the maker-reporter of the test "under the business entry exception to the hearsay rule * * * they were not records made outside of the ordinary course of police department business, solely for the instant litigation”.
Foster’s mention of the inadmissibility of a record made "solely for the instant litigation,” apparently was intended to distinguish the routine police report therein from one made for a self-serving purpose to secure a particular litigative result, like that in Palmer v Hoffman (318 US 109, supra, see summary of argument in Foster, 27 NY2d 47, 49 supra ). This phrase in Foster has no relevance to a record like the instant one, made by a public employee without regard for its litigative effect; indeed, if a ballistics report shows that a firearm is "inoperable” instead of "operable” (see below as to this occurrence), a criminal prosecution may be defeated. (See, e.g., People v Grillo, 15 AD2d 502, affd 11 NY2d 841.)[2]
The operability test report herein is indistinguishable in principle from the speedometer test report held admissible without the reporter’s testimony in Foster. Both tests were made for the purpose of detecting law violators and for use in evidence in a resulting prosecution — there in the ordinary course of police business of enforcing the speed laws and here the gun laws.
2. Inutility of Testimony of Maker of Operability Report
Operability of a firearm is determined by a test shot (see *1085 miscellaneous order 948 of New York City Police Department, The Handling of Evidence — Ballistics Section, p 5, par 4A). No refined instruction or microscopic testing, such as relate to determining whether a particular bullet could have been fired from a particular gun (see miscellaneous order 948, pp 3-5), is involved.[3] Thus, the instant report that the gun possessed by respondent was operable was the product of an even simpler test than the chemical report of alcoholic content admitted in Porter (46 AD2d 307, 311, supra) as "the product of a simple mathematical computation”. And if inoperable, the report, as this court has observed, unmistakably describes the gun as "INOPERABLE”; many of the firearms tested are inoperable, since all firearms "recovered” by the police are tested, including toy guns (miscellaneous order 948, p 2).
As in the case of other public reports and records admitted as exceptions to the hearsay rule,[4] the reporter who signs a routine ballistics report on operability, if called to the witness stand, has no recollection whatever of the reported test; his testimony consists of his reading the report aloud. This happening — inevitable for testers in New York City who routinely test the operability of hundreds of guns a month — has been observed by this court many times.
While the practice in juvenile delinquency cases has been for the Corporation Counsel to produce the maker of a ballistics report because the defense attorneys refuse to stipulate to its admission, long acquiescence in this defense demand is not an argument for its validity. Thus, the admissibility of a speedometer deviation report, approved in 1970 in Foster (27 NY2d 47, supra), apparently had been upheld only once before, in 1958 (see People v Jones, 10 Misc 2d 1067, cited in Foster, supra, p 52). There, as here, the lower trial court had noted that the examination and cross-examination of the reporters — theretofore deemed essential — added nothing of *1086 probative value and resulted only "in demobilizing from * * * more vital duties * * * a number of officers.” (Jones, 10 Misc 2d 1067-1068 supra.) Here, as there, this court has the duty of conserving public resources and expediting trials to the extent consistent with accurate and fair proceedings.[5] 6
The court noted in People v Magri (3 NY2d 562, 566), in approving judicial progress in the acceptance of technical data, that "Almost daily * * * ballistic evidence, among a variety of kindred scientific methods, are freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying them.” While research has not disclosed any decision in this State on the admission of a report of ballistics evidence without the appearance of the reporter, precedent and principle establish the validity of such admission, and the report here in issue is admitted.

. The only pertinence herein of Palmer is its note that the business records rule is as important in criminal as in civil cases (318 US 109,112, n 3).

. In Grillo an indictment was dismissed because of evidence before the Grand Jury of a pistol’s inoperability; ballistics reports are explicitly admissible before the Grand Jury under CPL 190.30. As to the bearing of CPL 190.30 on the CPLR exceptions to the hearsay rule, see Matter of Kevin G. (80 Misc 2d 517, 521, n 6).

. The presumption of official regularity (see Kane v Walsh, 295 NY 198, 206; Matter of Miller v Greene County, 40 AD2d 738) supports the presumption that the laboratory director performed his duty of insuring accurate technical reports by competent employees. (New York City Police Department Rule 1/49; New York City Charter, § 434.) In any event, the only possible error from ignorance on the part of an operability tester would favor the respondent, in that the wrong size bullet or firing method would result in a report of inoperability.

. See citations in Matter of Kevin G. (80 Misc 2d 517, 523; Wong Wing Foo v McGrath, 196 F2d 120, 123): "there is a great likelihood that a public official would have no memory at all respecting his action in hundreds of entries that are little more than mechanical.”

. The report should not be deemed conclusive as to operability; respondent has a right to observe a test-firing of the gun. (Compare Kevin G., 80 Misc 2d 517, 524, n 9; Commonwealth v DiFrancesco, 458 Pa 188, —; 329 A2d 204, 210, n 12.)