OPINION OF THE COURT
Frank Torres, J.
This is a motion, by a doctor, to quash or modify a subpoena duces tecum, issued to require him to produce in court all medical reports, lab analysis, blood test results and any other and all medical and laboratory tests conducted regarding the human leucocyte antigen (HLA) test results developed as a consequence of an order of the court made during the course of a paternity proceeding.
The underlying filiation proceeding before the court is brought by a petitioner seeking to establish that the respondent is the father of her out-of-wedlock child, and to obtain corresponding support. During the course of the proceeding, and pursuant to sections 418 and 532 of the Family Court Act, the court ordered that an HLA blood-tissue test be administered of the petitioner, the respondent, and child parties involved in these proceedings, the New York State Legislature having on March 2, 1981 amended the law to allow that the results of such an examination be received in evidence to aid in the determination of whether the alleged father is or is not the father, except in cases where exclusion has already been estab- \ fished by other blood-grouping tests. This court, on Sep *739 tember 14,1981 decided that it would receive into evidence the report of results of the court-ordered HLA examination, without further foundation, consistent with this court’s prior decision in Matter of Carmen I. v Robert K. (110 Misc 2d 310). Concededly, this determination eliminates: (a) the incurring of an additional expert witness expense, beyond the already high cost of the HLA test itself, and (b) the time consumed by the trial court to place upon the record the technical testimony of the procedures of taking and testing the blood of the parties, the explanation of the tests performed, and the complex scientific rationale employed in arriving at the report submitted in compliance with the order of the court.
By its order of March 20, 1981, this court directed that the doctor, attached to the Lindsley F. Kimball Research Institute of the New York Blood Center, perform the examination of the blood of the parties, and report the results of the examination to the court. The court did so with notice that the New York Blood Center is one of the largest, if not the largest, facility of its kind, that it has been engaged in extensive major blood research, that it is a laboratory, which has undertaken the testing of bloods in countless cases., of disputed paternity, that it employs proven accepted) procedures to test blood in such cases, and that the expertise and conclusions of the doctor involved have been regularly accepted by this court, and other courts of this jurisdiction. This court ordered the examination and consequent report from the doctor in reliance upon his established pertinent expertise.
The petitioner’s, respondent’s, and child’s blood were examined as ordered. A report was submitted to the court. No issue is being raised by the respondent as to the examination itself, it being conceded that the respondent does not have the expertise with respect to such procedures, to raise an issue. Neither is there an issue raised as to the conclusion stated in the report to the effect that the likelihood of respondent’s paternity is practically proved.
Notwithstanding, the respondent is seeking through this subpoena to require the appearance at trial, of the examining doctor, not “as an expert professional witness,” but as a “necessary and essential” witness, “to explain the underly *740 ing foundation and procedures etc.,” upon which is based a letter purported to be the results of a blood-grouping HLA test submitted under the expert’s signature, and which the court has indicated it will receive as evidence without further foundation. The position of the respondent is explicitly stated in a letter from the respondent’s attorney to the doctor, which states, inter alia, “Since petitioner and her attorney refuse to call you as their witness to explain the underlying foundation and procedures, etc., we were left with no choice except on respondent’s behalf to do so. Therefore we had no choice except to utilize the subpoena method available, to require your appearance * * * The subpoena does not seek your appearance as an expert professional witness on behalf of the defendant, and thus, a professional witness fee is not appropriate.”
On the date this case appeared on the calendar of the court for trial, the doctor was the only person who appeared punctually to answer the calendar call, and voiced his objection to the court to being required to appear as subpoenaed. Later that morning the trial was adjourned. Before the new trial date, this motion to quash or modify was brought by the doctor.
On hearing arguments of counsel on this motion, this court is satisfied that there is no evidence of an issue in this proceeding wherein the doctor is involved as an ordinary witness. There is no allegation of irregularity with respect to the HLA test itself. No evidence is offered to raise any concern that would justify or induce this court to seek any clarification, explanation, or verification of compliance with the court’s order. There is no explanation of how the appearance of the doctor is likely to assist the court. There is no evidence pointing to any area or issue, wherein the doctor would be called to evidence, other than) with respect to his function as an expert in the examination of the bloods. This court does not agree that it can categorize his appearance and production of medical reports, lab analysis, blood test results and any other and all medical and laboratory tests conducted regarding the HLA test results in this proceeding as other than professional. This court cannot accept the respondent’s contention that such appearance would be of “an ordinary witness” nature. *741 The arguments favoring the subpoena and opposing the motion to quash lead the court to conclude that the subpoena is being used for discovery purposes, without clear objective or expectation of what the examination of the doctor will produce. This court would consider it inappropriate to allow the subpoena, under these circumstances, to be used for aimless discovery.
In considering this motion this court accepts the general rule that a person, expert or ordinary, can be compelled by subpoena to appear for the purpose of supplying verbal or documentary evidence that may be relevant to a question in issue. The court also recognizes that a person called on to testify because of scientific, technical or other specialized knowledge, to assist the trier of facts to determine a fact in issue, and qualified by the knowledge, skill, experience, training, or education to form an opinion acceptable to the court, may qualify as an expert, and as such is entitled to negotiate for compensation for so appearing. The rule is well established in New York that a witness may not be compelled to give expert testimony, but may contract to do so for an adequate consideration. (People ex rel. Kraushaar Bros. & Co. v Thorpe, 296 NY 223.)
This court finds that the doctor moving to quash this subpoena has no independent personal knowledge of facts material to the issue of paternity raised by the parties in this proceeding, and that his involvement is only by virtue of his pertinent expertise in the administration of human leucocyte antigen blood tissue test pursuant to the order of the court that he administer the test and submit a report. This court accordingly determines that in this instance the doctor is not an ordinary witness, but an expert, and as such is entitled to a modification of the subpoena allowing for his negotiation for compensation as a condition for appearance.
Inasmuch as the respondent refuses to recognize the doctor’s appearance as that of an expert, and to negotiate with the doctor for his services as an expert witness, this court grants the motion to quash.