OPINION OF THE COURT
Mara T. Thorpe, J.
Upon motion of the respondent in this paternity proceeding, a human leucocyte antigen (HLA) test has been performed on the parties and the subject child. The test results are favorable to the petitioner who has moved that the report be admitted into evidence. As a result, the respondent now moves for an order directing the petitioner, the Department of Social Services, to produce the doctor who signed the report for cross-examination at trial and to pay the fee for the doctor’s trial testimony. In the alternative, the respondent seeks authorization to obtain the services of an expert witness pursuant to section 722-c of the County Law and to pay the fee for the doctor’s trial testimony from that fund. For the reasons which follow, the motion is denied in all respects.
Pursuant to section 532 of the Family Court Act, as amended by chapter 695 of the Laws of 1982, reports of HLA tests conducted by a duly qualified physician are *475 admissible in evidence under CPLR 4518. The latter section, also amended in 1982 by chapter 695, provides that “any record and report relating to the administering and analysis of a * * * human leucocyte antigen test” conducted pursuant to section 532 of the Family Court Act is admissible in evidence and constitutes prima facie evidence of the facts contained therein if duly certified or authenticated. (CPLR 4518, subd [c].) The history of section 532 of the Family Court Act and CPLR 4518 (subd [c]) and of the decisional law interpreting those sections clearly indicates that in enacting chapter 695 of the Laws of 1982, the Legislature intended to eliminate any requirement that the proponent of the report produce testimony regarding it in conjunction with its introduction into evidence.
Prior to the 1982 amendment, section 532 of the Family Court Act authorized the admission into evidence of HLA test results, but was silent as to the procedure by which the reports were to be admitted. Although agreeing that the CPLR 4518 (subd [c]) hospital records exception to the hearsay rule was inapplicable if the test was not performed in a hospital, courts reached different conclusions as to whether it was necessary for the proponent of the report to produce a witness able to lay a foundation for its admission pursuant to the business records exception to the hearsay rule (CPLR 4518, subd [a]). In some cases it was held that testimony establishing a proper business records foundation was a prerequisite to admission of the report in the absence of a legislative directive to the contrary or a stipulation between the parties. (See, e.g., Matter of Lorraine M. v Linwood M. S., 115 Misc 2d 922; Matter of Rosemary W. v Bruce A., 113 Misc 2d 745; Legislative Memorandum, McKinney’s Session Laws of NY, 1982, p 2547.) In other cases, the court took judicial notice of the “standards and procedures inherent in the administering of blood tests, and of the objective scientific nature of both the test results and the interpretation of those results” and admitted the HLA report without any other foundation. (Matter of Carmen I. v Robert K., 110 Misc 2d 310, 312; Matter of Lynette D. v Carlton W., 112 Misc 2d 738.)
Shortly after the decision in Matter of Rosemary W. v Bruce A. (supra), the Legislature enacted chapter 695 of *476 the Laws of 1982 which amended CPLR 4518 (subd [c]) to include reports of HLA tests among the documents which are admissible in evidence as prima facie evidence of their contents if duly certified or authenticated. CPLR 4518 (subd [c]) exists, of course, for the specific purpose of relieving the proponent of any of the enumerated records from the burden of producing a witness to lay a business record foundation. (Sixteenth Annual Report of the NY Judicial Conference, 1971, p A42.) However, it is well established that it also permits the scientific opinions and conclusions of physicians which are contained in hospital records to come into evidence without any requirement that those physicians be called to give expert testimony. (People v Kohlmeyer, 284 NY 366 [applying a predecessor statute]; Pekar v Tax, 43 AD2d 957.) In the absence of any evidence to the contrary, it must be assumed that the Legislature intended that CPLR 4518 (subd [c]) be applied in a similar manner with regard to the scientific opinions and conclusions of a physician contained in a report of an HLA test and thus, by including those tests within the scope of that section, to eliminate any burden on the proponent of the report to produce the physician.[1] See, also, the memorandum of the legislative representative of the City of New York (McKinney’s Session Laws of NY, 1982, p 2547), supporting the 1982 amendment and specifically pointing to the additional cost incurred by the local social *477 services district when the testimony of an expert witness in conjunction with the admission of HLA reports is required by a court and arguing that such cost is not warranted in view of the high accuracy and reliability of the tests.
Elimination of any requirement that the proponent of an HLA report produce the doctor at trial does, of course, affect the opposing party’s right to cross-examine the witnesses against him. However, it has been held that even in a criminal proceeding, where the rights to confrontation and cross-examination are most carefully guarded, the impairment of those rights resulting from admission of a report of a blood test pursuant to the business records rule without opportunity to cross-examine the person who performed the test does not amount to a deprivation of any constitutional rights. (People v Porter, 46 AD2d 307.) In that case, Chief Judge Cooke, then writing for the Appellate Division, Third Department, stated that the possibility that the person performing the test may not have been properly qualified or may have performed the test erroneously affects only the weight to be given to such evidence, not its admissibility. (People v Porter, supra.) Thus, the issue of whether the physician performing the test should be required to testify is a policy question properly within the province of the Legislature to decide.
For the foregoing reasons, the court holds that the petitioner herein may not be compelled to produce the doctor who signed the HLA report in this case and to pay his fee for trial testimony. The burden of coming forward with evidence rebutting that admitted pursuant to CPLR 4518 (subd [c]) is on the respondent. (People v Howard, 79 AD2d 1064.)
The remaining issue is whether the respondent is entitled to obtain the services of an expert witness at public expense.
Section 722-c of the County Law provides in pertinent part: “Upon a finding * * * that investigative, expert or other services are necessary and that the defendant or other person described in section two hundred forty-nine or section two hundred sixty-two of the family court act * * * is financially unable to obtain them, the court shall authorize counsel * * * to obtain the services on behalf of the *478 defendant or such other person.” The purpose of this statute is to provide an indigent respondent with services necessary to the preparation of a defense, and before the expenditure of funds pursuant to this statute can be authorized, the court must make a finding that the respondent is indigent and that there is a necessity for the services sought. (People v Pride, 79 Misc 2d 581.) In ruling on applications under this statute, the courts have been careful not to “ ‘provide carte blanche to the county treasury’ ” (People v Powell, 101 Misc 2d 315, 317; People v Baker, 69 Misc 2d 882, 884), and to stress that “ ‘[t]he equalization guaranteed is not to provide an indigent defendant with everything that a wealthier person could afford, but rather that he be treated equally and not discriminated against in the application of the law’ ” (People v Powell, supra, p 317).
The instant motion is supported solely by an affirmation of the respondent’s attorney alleging the indigency of the respondent. An attorney’s affirmation alone is not sufficient to support an application pursuant to section 722-c of the County Law, even when the court has already assigned counsel to the respondent. (People v Powell, supra; People v Jackson, 80 Misc 2d 595.) Rather, it is necessary for the respondent to submit an affidavit in support of the motion attesting to his indigency and his inability to otherwise pay for the services requested.
Were there no other deficiencies in the respondent’s motion, the court might deny the motion with leave to renew upon proper papers. However, counsel’s affirmation in support of the motion fails to provide a sufficient basis upon which to make a finding that the services sought are necessary to the respondent’s defense. The affirmation states merely that the respondent insists that the test was “erroneously performed or that it is not accurate,” and offers no factual allegations in support of this conclusion.[2] *479 This assertion alone does not support a finding that the doctor’s services are necessary to the respondent’s defense, and it would be an abuse of discretion to order payment for them on that basis.
For the foregoing reasons, the respondent’s motion must be denied in its entirety.

. It is noted in Matter of Lorraine M. v Linwood M. S. (115 Misc 2d 922, 927, n 1), that although chapter 695 of the Laws of 1982 added to the list of items admissible in evidence under CPLR 4518 (subd [c]) certified or authenticated HLA and blood-grouping tests performed by a duly qualified physician pursuant to section 532 of the Family Court Act its drafters inadvertently failed to add physicians to the list of persons authorized to certify or authenticate such a report. However, this court respectfully disagrees with that court’s suggestion that this drafting oversight compels the conclusion that the reports are therefore inadmissible in the absence of testimony establishing a business records foundation. Such an interpretation would render nugatory the language added to CPLR 4518 (subd [c]) making such reports admissible and thwart the clear intent of the Legislature.
Although a statute must generally be construed according to its plain terms, it is well settled that effectuation of the legislative intent is “ ‘the great and controlling’ ” principle to be applied (Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205), and where a literal construction would produce a result plainly contrary to that intended by the Legislature an omission in a statute may be supplied by the courts (Matter of Proppe, 46 Misc 2d 247; Standard Acc. Ins. Co. v Newman, 2 Misc 2d 348, affd 268 App Div 967, mot for lv to app den 268 App Div 1039). Thus, the authority of a physician to certify an HLA report as correct can be read into CPLR 4518 (subd [c]). Nonetheless, it would be preferable for the Legislature to address and clarify this point, and the court urges it to do so to avoid the possibility of inconsistent decisions construing this statute.

. For example, factual allegations regarding the respondent’s ethnic origins might provide a valid basis upon which to grant such an application. See Matter of Alicia C. v Evaristo G. (115 Misc 2d 564), indicating that there is no single applicable table upon which to base the calculation of the probability of paternity in the case of Hispanics. In such case, the author of the vast majority of HLA reports submitted in paternity cases in *479 New York City testified, the choice of whether to use the Caucasian table or the black table is essentially arbitrary and the conclusions reached can vary widely depending on which table is selected.