Gabrielli, J.
Plaintiff, a New York City fireman, sustained
serious injuries when, in responding to an urgent fire alarm, he fell to the main apparatus floor of the firehouse through an open, unguarded sliding pole hole in a darkened second-floor dormitory room. Plaintiff charged the defendant city with negligence in failing to maintain adequate lighting and guards at the pole hole. The jury agreed and returned a verdict in favor of plaintiff in the sum of $1,600,000. An unanimous Appellate Division affirmed as to liability but directed a new *33 trial as to damages alone unless plaintiff stipulated to a reduction of damages to $750,000 and plaintiff so stipulated.
On this appeal, the city argues, inter alia, that reversible error was committed because the jury was charged: (1) that plaintiff was confronted with an emergency situation; (2) that fire department regulations require use of the sliding pole in emergencies; and, (3) that the use of alcohol was "not in this case”. We reject each claim.
At trial, plaintiff testified that on the day of the accident he had sandwiches and four to six ounces of wine for lunch, and that he had consumed no other alcoholic beverages that day. He stated that following lunch he participated in a sports activity in a park near his home, and then reported for work.
At the 6:00 p.m. daily roll call, his commanding officer, Lt. Steyert, inspected the appearance and condition of the firemen coming on duty, including the plaintiff, and found plaintiff fit for duty noting that fact in his daily report log. Lt. Steyert testified that there was no odor of alcohol about plaintiff’s person. Following roll call, plaintiff and other firemen drank coffee and prepared their dinner in the main-floor kitchen. At approximately 7:15 p.m., plaintiff left the kitchen and went to the second-floor lavatory; the upstairs was lighted at that time. Shortly thereafter, Lt. Steyert, then in his second-floor office, and unaware of plaintiff’s presence on that floor, left his work and turned off the overhead lights on his way downstairs.
A drill was scheduled at 7:30 p.m., and when Lt. Steyert realized that plaintiff was not present, he called upstairs to him and plaintiff answered that he would be right down. The drill did not take place because a fire alarm sounded in the meantime. Plaintiff testified that when he left the lavatory, the upstairs area was very dark; and that as he stepped out of the lavatory, the fire alarm began to ring and he automatically listened to the number of gongs and determined that his company was being called for a "first due” alarm;[1] thus, he immediately headed for the nearest pole hole since, as the testimony shows, "[yjou’re supposed to respond to the floor by pole hole when the alarm goes off. * * * That’s the rule.” Plaintiff further testified that he was unable to discern the *34 pole or pole enclosure and that there was no light coming up through the pole hole;[2] hence, he entered the darkened room with his arms outstretched attempting to locate the pole, and then his hands hit something, and that was the last thing plaintiff could remember because he fell through the hole and onto the floor below very rapidly.
Although the city attempted to adduce evidence that plaintiff acted under the influence of alcohol, the trial court ruled it inadmissible and eventually found it necessary to charge:
"[T]hat alcohol or the influence of alcohol is not in this case; as a matter of law I tell you this. There is no evidence for your consideration that is probative, that is valuable in the Court’s opinion for you to make any such deductions. On the contrary even from the defendant’s exhibits it clearly shows and from the testimony of Dr. Seley, I believe, and from the testimony of all the other witnesses that said he was not under the influence of alcohol, there clearly is nothing from which you could infer that he was. The medical records, the medical evidence that we have does not support it nor does the testimony.”
The trial court also charged the jury with respect to the circumstances under which the mishap occurred that:
"Now the evidence without contradiction shows that the plaintiff was required to respond to signal 3762 by sliding [down] the pole in question, that is pole 'A’ or any pole, but by pole. His job was to get to the fire apparatus * * * by sliding the pole. If that was an emergency he had no choice. He must take a pole because that is an alarm and either whether first due or second due it was an emergency condition and the evidence is clear that it was an emergency condition.
"* * * A person faced with an emergency condition and who acts without opportunity for deliberation may not be charged with negligence if he acts as a reasonably prudent person would act with the same duties under the same emergency circumstances.”
Finally, referring to the rules of the fire department, the court charged:
"If you believe from the evidence that the plaintiff was responding to an alarm and that there was an emergency *35 then in that event the plaintiff had the right to use the sliding pole and more than that was compelled to use the sliding pole under Section 19.3.9 of the Rules of the Uniformed Force of the Fire Department of the City of New York because that is the method by which you use in an emergency, the pole”, to which charge the city excepted.
The city attempted to introduce a laboratory report on a blood sample allegedly taken from plaintiff by a fire department doctor some five hours following the incident. The trial court, properly we think, ruled the report inadmissible because an adequate foundation was not laid for its admission.
The chain of custody of any blood sample must be established (see People v Connelly, 35 NY2d 171, 174-175) and the failure to do so may be excused only where the circumstances provide reasonable assurances of the identity and unchanged condition of the sample (People v Porter, 46 AD2d 307 [Cooke, J.]). Here the doctor who drew the sample gave it to a fire department chauffeur whose name he could not recall and who was not produced at trial. Moreover, the sample was given to the chauffeur on Saturday evening and not delivered until Monday morning, "at the earliest”, leaving over 36 hours of custody completely unaccounted for. No testimony was adduced to indicate who received the sample at the laboratory, its condition on receipt, the size of the vial containing the specimen, whether it was refrigerated during the long weekend, how the vial was labeled or identified, or the quantity or condition of its contents upon arrival. Hence, there can be no reasonable assurance of the unchanged condition of the blood sample. Nonetheless, it is argued that there is no indication that the sample was tampered with while it was in the chauffeur’s possession and that it ought to be admitted for that reason. This claim, of course, begs the question for the driver was never produced and could not be examined regarding his care and custody of the sample (see Durham v Melly, 14 AD2d 389).
To be distinguished are the results in People v Malone (14 NY2d 8) where it was specifically found, contrary to the facts here, that a nonalcoholic preparation was used to sterilize the arm and "that the specimen was not accessible to persons not called as witnesses” (p 11); and People v Porter (46 AD2d 307, supra) where then Mr. Justice Cooke emphasized that there was "no question of the identity or condition of the sample received” by the laboratory and that the only period unac *36 counted for was "the brief interlude between delivery of the sample to the chemist and his analysis of it” (p 311); and, in People v Connelly (35 NY2d 171, supra) where there was no missing link in the chain of custody and objections were raised only as to how custody was maintained, a matter which we held involved questions of degree "best resolved during a full voir dire at trial” (p 176). In short, the trial court ruling in this case with respect to the admissiblity of the blood sample report was entirely correct.
Nor do we find any error in the exclusion of the fire department doctor’s testimony that he detected an odor of alcohol on plaintiffs breath. His testimony, in light of its potentially prejudicial impact, was required to be weighed against the complete dearth of other probative evidence to support the testimony, along with the abundance of other countervailing evidence. On this record and in these circumstances the admissibility of the preferred testimony rested within the discretionary power of the Trial Judge, the exercise of which was left undisturbed by an unanimous Appellate Division.[3] In sum, the charge regarding alcohol was proper.
The city also asserts that a fire alarm may not be considered an emergency for a fireman because he is trained to expect such signals. We are unable to adopt this reasoning in the case before us. The emergency doctrine has never been so limited nor should it be. The essence of the doctrine is that in sudden and unexpected circumstances where an actor is left little or no time for thought, or is reasonably so disturbed or excited that he must make a speedy decision and cannot weigh alternative courses of action, he "cannot reasonably be held to the same conduct as one who has had full opportunity to reflect” (Prosser, Law of Torts [4th ed], § 33, p 169; cf. Wagner v International Ry. Co., 232 NY 176). As Chief Justice Holmes once put it, "A choice may be mistaken and yet prudent” (Kane v Worcester Cons. St. Ry. Co., 182 Mass 201, 202). Here the situation confronting plaintiff was sudden and unforeseen in that plaintiff was not aware that there would be a combination of events such as the sounding of the alarm at the time set for the drill, along with the lack of illumination when he was responding to the alarm. Moreover, plaintiff *37 testified that a fire alarm creates an emergency situation, and a witness for the defense agreed. We conclude, therefore, that under the circumstances an emergency charge was properly given.
Finally, while under other circumstances the charge with respect to the meaning of the fire department rule (§ 19.3.9) might be questioned, the error, if any, was insubstantial for plaintiff testified that he understood the rule to require the use of the sliding pole in emergencies (i.e., after an alarm sounded); and not one of the 13 other fire department employees and officials called to testify contradicted plaintiff. Thus, the uncontroverted evidence on the record was that the pole had to be used and the fact that the trial court stated that to be a departmental rule was inconsequential.
The critical issues at trial were whether the city should have foreseen an accident of this kind and taken some precautions to guard against it, and whether plaintiff was contributorily negligent in the circumstances under which the incident occurred. Hence, they were principally questions for the triers of fact to resolve, and the jury having resolved them against the city, and the Appellate Division having unanimously affirmed their findings, we may not disturb their determination absent some pertinent, strident error in the record— which we do not find.
Accordingly, the order of the Appellate Division should be affirmed.

. Plaintiff testified that his company was first due at the fire scene. However, another fireman testified that they were "second due”. Nonetheless, the testimony showed there to be no substantial difference between a "first due” or "second due” alarm and that both were considered to require urgent and immediate response.

. Light from the lower floor was not visible from above because the pole hole was over 15 feet from the nearest downstairs light fixture and because the depth of the hole itself was 15 inches and did not permit light to pass through to the upstairs.

. Additionally, we note evidence of a self-aborted attempt by two fire department officials to prefer charges that plaintiff was under the influence of alcohol in order to deter him from bringing this action, and their possible consequent investigation by city officials.