Jasen, J.
The only issue of importance on this appeal is whether the prosecution established an adequate chain of custody to support the admissibility of various drugs seized *341 pursuant to a valid search warrant. We conclude that the narcotics were properly admitted into evidence and would, therefore, affirm the order of the Appellate Division.
On the evening of February 12, 1970, three plainclothes police officers executed a search warrant on apartment 3A of 2534 Broadway in Manhattan. The actual search was preceded by a brief struggle with the occupant of the apartment, defendant Michael Julian. The officers testified that they discovered packages of suspected drugs at various places throughout the apartment. A small plastic bag of white powder was found on top of a dresser. In the center of the bedroom floor was a shopping bag filled with green vegetable matter resembling marijuana. Eighteen other packets of white powder were found either behind the refrigerator or under the sink. Finally, a rubber bag of white powder was discovered in the pocket of a jacket. Officer Tasik collected the various items and placed them into two small suitcases that were also found in the apartment. He then took the material to his station house, where he sealed the suitcases and deposited them with the property clerk. The following day, Officer Tasik personally took the suitcases to the police narcotics laboratory for chemical analysis of the contents. There, Sergeant Roger Fleming weighed and tested the material. Each of the packages was found to contain illegal drugs. Sergeant Fleming placed a seal on each of the packages and wrote his initials, the date, and the police laboratory number on each seal. The drugs were then placed back into the suitcases and remained at the laboratory until March 4, 1970, at which time Officer Tasik reclaimed the evidence for presentment to the Grand Jury. At the end of the day, Tasik gave the items to the police property clerk for safekeeping in the property clerk’s vault.
While awaiting trial and free on bail, the defendant absconded from the jurisdiction. Consequently, his trial was delayed for two years until defendant was recaptured. When Officer Tasik finally had occasion to retrieve the evidence in October, 1973, he discovered that it had been taken from the property clerk’s vault to the police laboratory for reanalysis. The evidence was found to have been at the laboratory at least since February 7, 1973, when Detective Carmine Diorio had performed a second chemical analysis. As part of a general investigation into the theft of drugs from police vaults, the police commissioner had ordered the reinventory and reanalysis of all drugs held by the property clerk to *342 determine whether any amounts had been stolen. The 1973 reanalysis confirmed that each package contained an illegal substance, with slight weight variations from the prior examination. However, all of the variations fell within the range of expected deviation. Expert testimony indicated that the weight differences could be explained by a change in weighing techniques, weight losses associated with the testing procedure, and the varying tendency to either gain or lose moisture depending on the nature of the substance and the type of packaging. Officer Diorio testified that he reopened the packages without disturbing the identification seals from the first analysis. Upon completing his reanalysis, Diorio resealed each exhibit with a different seal, placed them back into the suitcases and sealed those cases with a tape that he initialed. At trial, Diorio identified the suitcases and recognized that the tape placed around the suitcases had not been disturbed. Similarly, he recognized his seal on each of the individual packages and stated that their condition appeared to be unchanged. The original analyst, Officer Fleming, testified at trial that the packages appeared to be in the same condition as when he last saw them.
Defendant does not dispute that a chain of custody was established from the time of seizure to the deposit with the property clerk on March 4, 1970, and again from the reanalysis of February 7, 1973 to the time of trial. Sometime between March 4, 1970 and February 7, 1973, however, the drugs were transferred by an unknown individual from the property clerk’s safe to, eventually, the chemical laboratory. Thus, the record contains no precise proof of the day-by-day location of the drugs during that period. Defendant contends that this gap in the chain of custody renders this real evidence inadmissible. To emphasize the danger of tampering, he argues that if Detective Diorio could reopen the packages without breaking the seals from the earlier analysis, an outsider with access during the gap could also have tainted the samples. He asserts that this possibility offers a likely explanation for the weight variations.
We do not accept defendant’s argument. To be admissible, any piece of real evidence must be shown to accurately portray a relevant and material element of the case. When real evidence is purported to be the actual object associated with a crime, the proof of accuracy has two elements. The offering party must establish, first, that the evidence is identi *343 cal to that involved in the crime; and, second, that it has not been tampered with. In People v Flanigan (174 NY 356, 368), our court held that an iron bar was admissible because "[a]ll the witnesses who spoke upon the subject testified that it was the same bar and in substantially the same condition.” When an "object possesses unique characteristics or markings and is not subject to material alteration which is not readily apparent”, a simple identification is sufficient to warrant admission. (People v Connelly, 35 NY2d 171, 174.) While a fungible item, such as a package of white powder, presents special difficulties in proving the necessary authenticity, the offering party is required to establish only the same two elements, namely, that it is the identical evidence and has not been tampered with.
Proof of a complete chain of custody is one accepted technique for showing the authenticity of a fungible item of real evidence. In People v Connelly (supra), we identified this chain of custody technique as the method of general, but not exclusive, acceptability. We stated that the admissibility of a fungible item "generally requires that all those who have handled the item 'identify it and testify to its custody and unchanged condition.’ ” (35 NY2d, at p 174.) That is not to say, however, that the chain of custody requirement should be extended to unreasonable limits. (E.g., People v Jamison, 29 AD2d 973 [postal handlers need not testify].) In Amaro v City of New York (40 NY2d 30, 35), we recognized that failure to establish a chain of custody may be excused "where the circumstances provide reasonable assurances of the identity and unchanged condition” of the evidence. Such an exception arose in People v Porter (46 AD2d 307). Again, the court admitted the real evidence because the proof established the two basic requirements for showing authenticity, namely, that there existed "reasonable assurances of identity and unchanged condition”. (46 AD2d, at p 311.)
We believe that the prosecution amply demonstrated the identity of the offered evidence as that which was seized in defendant’s apartment. The proof indicates that after being deposited with the propety clerk, the evidence was transferred to another unit of the police department, pursuant to a legitimate administrative mandate. When discovered, the drugs were found precisely where they were supposed to be, in the police narcotics laboratory. At all times, the drugs apparently remained safely under police control. That the offered *344 items were the materials seized in defendant’s apartment was confirmed by the fact that they remained within identifiable containers. Throughout the period of police custody, the packages were stored in the same suitcases into which they had initially been placed. The identification seal attached to each bag further established that these were the same packages that had been analyzed by Sergeant Fleming in 1970. At least as to the identity of the items in question, the gap in the chain of custody was, therefore, adequately bridged.
Defendant’s better argument challenges whether the circumstances provide a reasonable assurance that the evidence had not been tampered with. Even though the evidence is adequately identified as the items initially seized, a further question is whether, during the gap in the chain of custody, some unknown party could have caused a material and prejudicial change in the condition or nature of the evidence. By the time the present gap occurred, however, the opportunity for creating such a prejudicial alteration no longer existed. It is undisputed that a chain of custody was adequately established from the time of seizure to the time of the first chemical analysis. Its finding that the packages contained illegal drugs could not be affected by any tampering that might have occurred after the analysis. Thus, there was no possibility that the gap could have permitted any prejudicial alteration of the contents of the drugs initially seized.
Moreover, we believe that the trial court had sufficient evidence to justify a factual conclusion that no tampering had occurred. The second analysis revealed that, except for normal deviations, the contents of the packages were no different after the gap than before. While the deficiencies in the chain of custody may certainly be used to discredit the weight of the real evidence, those deficiencies were not sufficient to render that evidence inadmissible. We believe that a chain in custody should be tested not by the satisfaction of a technical series of steps, but by whether the proof satisfies the rationale for requiring an evidentiary foundation. Applying this test, we hold that the prosecution established an adequate chain of custody to support the admissibility of the various drugs seized.
Accordingly, the order of the Appellate Division should be affirmed.
*345 Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.