In an action to recover damages for personal injuries, the plaintiff appeals from a judgment of the Supreme Court, Rockland County (Garvey, J.), entered September 1, 2011, *808 which, upon a jury verdict in favor of the defendants and against him on the issue of liability, and upon an order of the same court dated June 14, 2011, denying his motion pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law on the issue of liability or, in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial, is in favor of the defendants and against him, dismissing the complaint.
Ordered that the judgment is affirmed, with costs.
The Supreme Court properly denied the plaintiffs motion pursuant to CPLR 4404 (a) to set aside the verdict on the issue of liability and for judgment as a matter of law or, in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial. Pursuant to CPLR 4404 (a), a trial court “may set aside a verdict. . . and direct that judgment be entered in favor of a party entitled to judgment as a matter of law.” Here, however, a valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the jury on the basis of the evidence presented at trial (see Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Lalanne v Nyack Hosp., 45 AD3d 645, 646 [2007]). Further, a verdict should not be set aside as contrary to the weight of the evidence unless it could not have been reached upon any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]; Dunnaville v Metropolitan Tr. Auth. of City of N.Y., 68 AD3d 1047 [2009]; Artusa v Costco Wholesale, 27 AD3d 499, 500 [2006]; Nicastro v Park, 113 AD2d 129,132-137 [1985]). Whether a verdict should be set aside as contrary to the weight of the evidence is not a question of law, but instead requires the discretionary balancing of various factors (see Cohen v Hallmark Cards, 45 NY2d at 499; Alatzas v National R.R. Passenger Corp., 67 AD3d 832, 833 [2009]). It is within the province of the jury to determine issues of credibility, and great deference is accorded to the jury given its opportunity to see and hear the witnesses (see DeToia v Yellow Transp., Inc., 68 AD3d 804, 805 [2009]; Fowler v Jamaica Bus, 62 AD3d 943 [2009]). A fair interpretation of the evidence supported the jury’s determination that the defendant Brittany Lahm (hereinafter Brittany) was not negligent in the operation of her vehicle (see Nicastro v Park, 113 AD2d at 134-135).
Contrary to the plaintiff’s contention and our colleague’s dissent, under the particular circumstances of this case, the trial court properly charged the jury on the emergency doctrine. In assessing the propriety of whether to instruct a jury on the emergency doctrine, the trial court must “make the threshold *809 determination that there is some reasonable view of the evidence supporting the occurrence of a ‘qualifying emergency’ ” (Caristo v Sanzone, 96 NY2d 172, 175 [2001], quoting Rivera v New York City Tr. Auth., 77 NY2d 322, 327 [1991]; see Lifson v City of Syracuse, 17 NY3d 492, 497 [2011]). “Only then is a jury instructed to consider whether a defendant was faced with a sudden and unforeseen emergency not of the actor’s own making and, if so, whether [the] defendant’s response to the situation was that of a reasonably prudent person” (Caristo v Sanzone, 96 NY2d at 175). “The emergency instruction is, therefore, properly charged where the evidence supports a finding that the party requesting the charge was confronted by ‘a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration’ ” (id., quoting Rivera v New York City Tr. Auth., 77 NY2d at 327).
Here, “[v]iewing the evidence in the light most favorably toward giving the requested emergency doctrine instruction to the jury” (Kuci v Manhattan & Bronx Surface Tr. Operating Auth., 88 NY2d 923, 924 [1996]), based upon Brittany’s testimony, there is a reasonable view of the evidence that her conduct was the product of a “ ‘sudden and unexpected circumstance’ ” (Lifson v City of Syracuse, 17 NY3d at 497, quoting Caristo v Sanzone, 96 NY2d at 174). Contrary to our dissenting colleague’s determination, Brittany’s general awareness that Brandon Berman, a passenger in her vehicle, had engaged in certain distracting conduct while in the car would not preclude a jury from deciding that Brittany did not anticipate that he would suddenly pull the strings on her bikini top, thereby causing the top to fall and her breasts to be exposed (see Kuci v Manhattan & Bronx Surface Tr. Operating Auth., 88 NY2d at 924). It was for the jury to find whether Brittany was faced with a sudden and unforeseen emergency not of her own making and, if so, whether her response to the situation was that of a reasonably prudent person (see Caristo v Sanzone, 96 NY2d at 174-175). Rivera, J.E, Lott and Sgroi, JJ., concur.
Roman, J., dissents, and votes to reverse the judgment, on the law, and remit the matter to the Supreme Court, Rockland County, for a new trial in accordance with the following memorandum:
I respectfully disagree with the majority’s conclusion that the trial court properly instructed the jury on the emergency doctrine. As will be discussed, prior to the accident at issue, the driver of the subject vehicle, the defendant Brittany Lahm (hereinafter Brittany), was not faced with a sudden and unexpected circumstance leaving little or no time for thought, deliberation, *810 or consideration. As such, there is no reasonable view of the evidence that Brittany was confronted with a qualifying emergency.
On July 12, 2008, Brittany was operating a vehicle owned by her father, the defendant Phillip Lahm. There were four passengers in the vehicle, including the plaintiff, Jason Pelletier, and Brandon Berman (hereinafter Brandon), who was seated in the rear passenger seat behind the front-seat passenger. Brittany and her four passengers, all 19 years of age, were traveling home following a day at the New Jersey Shore. They had left the beach at 3:30 p.m., and were traveling northbound on the New York State Thruway at the time of the accident. Brittany testified that she had dinner plans scheduled at 7:30 p.m. that evening and “didn’t feel like being late.”
During the drive on the New York State Thruway, Brandon playfully pulled the strings of Brittany’s bikini top. Brittany reacted by taking her hands off the steering wheel for a split second to cover herself. The vehicle began to veer to the right. Brittany grabbed the steering wheel to steer the vehicle back into the lane, but she lost control of the car. The vehicle struck the center guardrail, vaulted over the guardrail, and overturned, coming to rest upside down in the southbound lanes. Brittany estimated that she had been driving on the Thruway for approximately 15-20 minutes before the accident occurred. As a result of the accident, the plaintiff sustained personal injuries and Brandon died.
The plaintiff subsequently commenced this action against the defendants to recover damages for personal injuries. At trial, the court charged the jury on the emergency doctrine. The jury ultimately returned a verdict finding that Brittany was not negligent in the happening of the accident. Following the trial, the court denied the plaintiffs motion pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law on the issue of liability, or, in the alternative, to set aside the verdict as contrary to the weight of the evidence and for a new trial. This appeal by the plaintiff ensued.
The emergency doctrine “recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context” (Rivera v New York City Tr. Auth., 77 NY2d 322, 327 [1991]; see Amaro v City of New York, 40 NY2d 30, 36 [1976]). “A person in *811 such an emergency situation ‘cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision’ ” (Rivera v New York City Tr. Auth., 77 NY2d at 327, quoting Prosser & Keeton, Torts § 33 at 196 [5th ed]). Prior to issuing an emergency instruction to the jury, the court is required “to make the threshold determination that there is some reasonable view of the evidence supporting the occurrence of a ‘qualifying emergency’ ” (Caristo v Sanzone, 96 NY2d 172, 175 [2001], quoting Rivera v New York City Tr. Auth., 77 NY2d at 327). “If, under some reasonable view of the evidence, an actor was confronted by a sudden and unforeseen occurrence not of the actor’s own making, then the reasonableness of the conduct in the face of the emergency is for the jury, which should be appropriately instructed” (Rivera v New York City Tr. Auth., 77 NY2d at 327). However, “[a]n emergency instruction is not proper where the situation is neither sudden nor unexpected or could have been reasonably anticipated in light of the surrounding circumstances” (Smith v Perfectaire Co., 270 AD2d 410, 410 [2000]; see Moore v Bame, 257 AD2d 716 [1999]; Hardy v Sicuranza, 133 AD2d 138 [1987]).
The “classic emergency situation” implicating the emergency doctrine involves a vehicle traveling in the opposite direction crossing over into oncoming traffic (Gajjar v Shah, 31 AD3d 377, 377 [2006]; see e.g. Ferebee v Amaya, 83 AD3d 997 [2011]; Palma v Garcia, 52 AD3d 795, 796 [2008]). By contrast, the charge has been found inappropriate in cases where the subject accident resulted from an occurrence which the parties had reason to anticipate (see e.g. Lifson v City of Syracuse, 17 NY3d 492, 495 [2011] [sun glare at sunset while traveling west]; Caristo v Sanzone, 96 NY2d at 175 [deteriorating weather conditions existing for at least two hours, resulting in icy roadway]).
In the present case, the evidence at trial established that, prior to the accident, Brandon engaged in a course of distracting conduct, including spitting chewing tobacco out the window, opening an umbrella inside the vehicle, leaning halfway out of the window, and using the umbrella to clean the tobacco off the exterior of the vehicle. Brandon, who had been laughing about his actions, then proceeded, from the backseat, to stick his feet over the center console into Brittany’s face. While the source of Brandon’s merriment was unknown, Brittany noted it was Brandon’s birthday and assumed that he was “on something” that day. Despite Brandon’s conduct, Brittany never attempted to pull the vehicle over, or to slow the vehicle down and, instead, continued to travel on the Thruway at a speed of 65 miles per hour.
*812 Brandon then pulled the bikini string tied around Brittany’s neck. As a result, Brittany released the steering wheel with her right hand to hold up her top and yelled at Brandon. Holding onto the steering wheel with her left hand and her bikini top with her right hand, Brittany leaned forward so the front-seat passenger could re-tie the string. As Brittany leaned forward, Brandon pulled the second bikini string on her back. It was at that moment Brittany testified she took both hands off the steering wheel for “a split second” to grab her bikini top. As a result, she lost control of the vehicle.
Viewing Brandon’s conduct in totality, the situation was neither sudden nor unexpected, and, in fact, could have been reasonably anticipated in light of the surrounding circumstances. Brittany was aware of Brandon’s inappropriate, distracting, and dangerous behavior, yet chose to maintain her speed at 65 miles per hour rather than take appropriate measures to ensure the safe operation of the vehicle. The foregoing does not present a situation envisioned by the emergency doctrine.
Moreover, it cannot be said that Brittany did not have time for “thought, deliberation or consideration,” in the face of Brandon’s behavior (Caristo v Sanzone, 96 NY2d at 174 [internal quotation marks omitted]). To the contrary, the record reveals that Brittany had a full opportunity to reflect on the ongoing situation, which occurred over a span of approximately 15-20 minutes (cf. Williams v Econ, 221 AD2d 429, 430 [1995] [applying the emergency doctrine where the defendant faced “an instantaneous cross-over emergency,” and “had only a fraction of a second to react”]). That Brittany had an opportunity to weigh alternative courses of conduct over that period of time was demonstrated by the fact that she took corrective measures in response to Brandon’s actions, including yelling at him to get back inside the vehicle, using her electronic controls to roll up Brandon’s window, and admonishing him to stop acting like an “idiot” and to stop sticking his feet in her face (cf. Roman v Vargas, 182 AD2d 543, 544 [1992] [emergency doctrine applicable where “there were no alternatives available” to the Stephens defendants to avoid the subject automobile accident, and the entire event involved “ ‘a question of seconds’ ”]).
Although the culminating act of pulling the second bikini string perhaps caused Brittany to instinctively remove her hands from the steering wheel to cover her breasts, nonetheless, the conduct was preceded by a series of incidents perpetrated by Brandon, of which Brittany was aware, which similarly interfered with Brittany’s ability to safely operate the vehicle (see Carson v De Lorenzo, 238 AD2d 790, 791 [1997] [“the chain *813 of events leading up to the collision was set in motion by defendant’s operation of her vehicle at a speed that was excessive for the prevailing weather and road conditions”]). That Brandon would ultimately commit an act which would cause Brittany to lose control of the vehicle, under the circumstances of this case, cannot be deemed sudden or unexpected (see Lifson v City of Syracuse, 17 NY3d at 495; Caristo v Sanzone, 96 NY2d at 175 [“Given (the defendant’s) admitted knowledge of the worsening weather conditions, the presence of ice on the hill cannot be deemed a sudden and unexpected emergency”]; Smith v Perfectaire Co., 270 AD2d at 410 [no qualifying emergency where the defendant driver, whose van struck the plaintiffs car from behind, knew there was ice on the roadways in the area, and therefore, had taken precautions to avoid skidding]). Therefore, contrary to the Supreme Court’s determination, there was no qualifying event justifying the issuance of an instruction on the emergency doctrine.
Accordingly, I would reverse the judgment, on the law, and remit the matter to the Supreme Court, Rockland County, for a new trial (see Smith v Perfectaire Co., 270 AD2d at 410). [Prior Case History: 32 Mise 3d 1230(A), 2011 NY Slip Op 51504(U).]